JOHN MASON, Appellant, *v.* TOWER HILL COMPANY (LIMITED), Respondent.

83h 479
79 AD¹241

*Negligence — damages for personal injuries — what is a prima facie case.*

It was shown upon the trial of an action, brought to recover damages arising from personal injuries resulting from the defendant's alleged negligence, that the defendant employed a stevedore, by whom the plaintiff was hired, to discharge the cargo of a vessel, and for that purpose furnished and put in place a span,

which was fastened to the masts of the vessel by ropes, which had been spliced; that the splice in one of the ropes drew out and the span fell, striking and injuring the plaintiff, who was engaged in operating the fall attached to the span. Witnesses testified that splices, if well made, would not draw apart.

*Held,* that the defendant, having undertaken to furnish and put the span in place, was required to exercise reasonable care to furnish one fit for the work for which it was to be used;

That the undisputed evidence was that the splice was not well made, and it devolved upon the defendant to show that it was free from negligence, as the plaintiff had made out a *prima facie* case.

APPEAL by the plaintiff, John Mason, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 7th day of May, 1892, upon the dismissal of the complaint directed by the court after a trial at the New York Circuit before the court and a jury.

The action was brought to recover damages resulting to the plaintiff, a longshoreman and freight handler, while in the employ of one P. H. Walsh, a stevedore, by reason of the alleged negligence of the defendant in not furnishing safe machinery and appliances for the hoisting of freight from one of its steamships.

*George E. Hart* and *Nelson S. Carr,* for the appellant.

*John H. V. Arnold,* for the respondent.

PER CURIAM:

September 24, 1888, the defendant corporation was the owner of the steamship *Tower Hill,* which was being unladen at a wharf in the city of Brooklyn by P. H. Walsh, a stevedore, who had contracted with the defendant to discharge the cargo. The plaintiff is by occupation a rigger and longshoreman, and, on the date mentioned, was employed by Walsh to assist in unloading the vessel. The cargo consisted of tin in pigs stowed below decks. A "span," consisting of wire rope at each end and a chain in the middle, was hung between masts about forty-five feet above the deck. To the center of this span a fall was attached by means of which the cargo was drawn on deck and carried to the wharf. The plaintiff was assisting in operating the fall, standing substantially under the span, which gave way, fell upon and injured him. The span was furnished and fastened to the masts by the defendant. The wire rope

near where it was attached to the jigger mast had been spliced, and the accident was caused by the drawing out of this splice. Peterson, who was at work on the vessel when the accident occurred, testified : " I found the splice drawn. * * * The span didn't carry away, only the splice drawed. In other words, it had pulled out ; that is what I mean. I did look at the splice. * * * I examined the ends of it (the span) and saw some splicing. I saw the men belonging to the ship splicing it. I hadn't seen it when it was originally spliced there. I say I have seen some splicing before that done on other vessels. I saw plenty of splicing. I have done plenty of splicing myself too. There ought to be three turns taken ; twice will do, but three ought to be taken — three times to make it safe to work at. Q. You say there was 1½ splices there ? A. No ; it was taken once. So far as I could see I could tell it on the rope when it came down on deck ; when the splicing drawed you could easily tell how many times it was taken around on each strand. * * * There was nothing that I could see there to show that there was any weakness in the strand, but one of the splices drawed ; that is all. The men were splicing this span next morning when I got there ; that was about six o'clock the next morning. We started then to splice it ; this is when we came down."

The fact that the splice in the rope pulled out is the only evidence of negligence in the case. The defendant having undertaken to furnish and put the span in place, was required to exercise reasonable care to furnish one fit for the work for which it was to be used. Witnesses testified that splices well made do not draw apart. The undisputed evidence is that this splice was not well made. Under this state of the evidence it devolved on the defendant to show that it was free from negligence if it could. The plaintiff made out a *prima facie* case.

The judgment should be reversed and a new trial granted, with costs to the plaintiff to abide the event.

Present — VAN BRUNT, P. J., PARKER and FOLLETT, JJ.

Judgment reversed, new trial granted, costs to plaintiff to abide event.