PEARD *v.* KARST *et al.*

*(Supreme Court, General Term, First Department.* May 24, 1890.)

NEGLIGENCE—DANGEROUS PREMISES.

    Plaintiff was injured by stepping on some loose boards which had been substituted for the sidewalk in front of some buildings in course of erection. Defendant had a contract with the owners of the building by which he was to do the mason, carpenter, and iron work, to dig the cesspools, trenches, etc., to flag the sidewalks, and by which he was to be responsible for accidents happening to individuals through his acts. Others had separate contracts to dig the cellar and do the plumbing. There was evidence that the boards had been placed across an excavation in the sidewalk by the cellar contractor, by direction of the architect. Defendant did not commence work on the sidewalk until after the accident. It appeared, however, that he was the only one who employed a watchman. *Held,* that plaintiff was entitled to go to the jury on the question as to whether defendant had charge of the premises, so as to be responsible for the accident. VAN BRUNT, P. J., dissenting.

Appeal from circuit court, New York county.

Action by Mary Peard against John D. Karst and John D. Karst, Jr. Judgment was given dismissing the complaint, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Herbert Van Dyke,* for appellant. *Kurzman & Yeaman,* for respondents.

BRADY, J. This was an action brought to recover for injuries resulting, it was charged, from the negligence of the defendants. On the 6th of October the plaintiff, while walking along Third avenue, between Sixty-Seventh and Sixty-Eighth streets, in this city, was thrown down by the turning of loose boards which had been substituted for the sidewalk. At the time of the accident the defendant was the contractor for the erection of buildings at the *locus in quo.* The flagging had been removed from the sidewalk, and trenches had been made therein for pipes, which had been filled, leaving the earth rough and uneven; and boards had been placed along what, when finished, would be the sidewalk. They were not fastened to the earth, and had no stringers or supports under them. The owners of the land had made a contract with the respondent, which called, on his part, for mason, carpenter, and iron work shown on the specifications, and by general drawings. He was to do all the digging, cesspools, trenches, closets, etc., as shown on the plans, also all flagging, with earth well rammed, soaked, and made solid, to flag the sidewalks, and to make good pavement of adjoining premises, and to be responsible for accidents to individuals. Indeed, the contract in that respect is that he is to be responsible for his own acts, or those of any of his workmen, from accidents to the buildings, to individuals, or to the property

of others, until the work should be fully completed and accepted. Other persons were engaged, as well, by the owners, to do certain parts of the work. One Dugan, who dug out the cellars, and a plumber named McCreery, seem to have had separate contracts affecting the *locus in quo;* and the question was, therefore, *in limine,* who was in possession of the premises at that time. The testimony does not establish beyond doubt and beyond conflict, therefore, which of the three persons named had possession or charge of the premises at the time the accident occurred. That they were all connected with the possession and charge of the premises, there can be no doubt. Whether the cellar digger, Dugan, had fully discharged his duties in reference to the cellar at the time of the injury, was necessarily one of the questions presented by the evidence, for the reason that the planks spoken of, and which occasioned the injury to the plaintiff, were put in the place in which they were found by direction of the architect employed by the owner, who stated, among other things, that he made a contract with Dugan for the digging, and also that there were contracts with him as architect,—one to excavate, another to do the mason and carpenter work, and another to do the trenching in the sidewalk, and get pipes into the house,—and that work on these different departments progressed during the erection of the house. At different stages of the work, there were planks on the sidewalk. In the beginning, when Dugan came there, he had some planks on barrels, and he ordered them put on the sidewalks. He says the trenches made were open when the defendant was building one side; that one trench was running in the center of the six houses. Each two houses had a trench. He further stated that the plumber came in at the same time that Dugan did; that Dugan owned the planks, but he was unable to say whether there were planks on the sidewalk on the 6th of October; and that he had charge of the sidewalk for the owners from the time he got the contract, and was there every day. He further said that nothing was done by defendant on the sidewalk until frost set in, after October 6th, when he ordered the sidewalk down, and the defendant put down the flagging. The defendant had a watchman, and no one else had, although he said he understood the plumber was to pay the watchman for being there.

This statement is quite sufficient to show that the question of possession was an important one, assuming the legal rule to be that the person in charge of the sidewalk under the contract with the owner was the person who was responsible, and this question becomes the more formidable, with regard to the defendant, in view of the provisions in the contract that he was to be responsible for accidents in his department; for, if in possession of the premises, it was in his department, upon which subject the fact that he had a watchman there had an important bearing.

When the evidence was finished, the defendants' counsel renewed his motion to dismiss the complaint—*First.* Upon the ground of a total failure of proof to sustain the cause of action alleged in the complaint, or any cause of action. *Second.* Upon the absence of any proof to show that the defendants, or either of them, interfered in any way with the sidewalk where the plaintiff fell; that they excavated it, or removed the flagging, or placed any boards on it. *Third.* Because there is affirmative proof on behalf of the plaintiff that the defendants, and neither of them, did do such things, but that the flagging was removed by somebody else before the defendants commenced their operations on the buildings. *Fourth.* Because, from the plaintiff's own testimony, if she was hurt at the time and place she stated, she has been guilty of contributory negligence. The court granted the motion, to which ruling there was an exception. The plaintiff's counsel asked to go to the jury on the question of possession and charge of the premises. The motion was denied, and exception was taken.

This was an erroneous ruling, for the suggestion just made, namely, that that was really the important issue in the case. If an excavation is to be made,

it is the duty of the person making it to see that it is properly and carefully covered, so as to make the street as safe for passage as before, and the obligation to keep it safe devolves upon any person who subsequently continues it in an improper or unsafe condition; and notice of a defect which could be discovered by proper examination is not necessary in order to fix this liability. *Irvine* v. *Wood*, 51 N. Y. 224; *Wolf* v. *Kilpatrick*, 101 N. Y. 146, 4 N. E. Rep. 188.   It follows from these authorities that if the other contractors had performed their different contracts, and left the premises necessarily in the possession of the defendant whose contract was in force, the responsibility for the safety of the public devolved upon him, whether the planks were properly or improperly laid down in the first instance by Dugan or by the plumber. It seems to be very clear, therefore, that the question of possession should have been submitted to the jury, and that the dismissal of the complaint was erroneous.   The judgment should be reversed, and a new trial ordered, with costs to appellant, to abide the event.

DANIELS, J., (*concurring*.)   The plaintiff encountered a fall, from which she sustained painful injuries, on the 6th of October, 1885, while walking along the sidewalk on the west side of Third avenue, north of Sixty-Seventh street.   Buildings were then in process of erection by John D. Karst, Jr., under a contract with the owner of the property.   This contract was made on the 17th of August in the year 1885, for the erection and finishing of six buildings, which by the agreement were to be finished by the 1st of January, 1886; and the work was to be commenced within five days after the execution of the contract, and the proof indicated that it was commenced within or about that time.   But prior to the commencement of the erection of the buildings the flagging upon the sidewalk had been taken up by John T. Tripler, and after that Martin M. Dugan excavated the grounds for the buildings, and the removal of the earth and other material therefrom.   Three trenches were also excavated across the sidewalk; each two of the six houses on the ground having one trench.   They were of the depth of from seven to thirteen feet below the grade, and they were opened to put down sewers, gas, and other pipes; and it was stated that they were dug by Mr. Dugan, which, however, in his own evidence, he denied to be the fact.   When the pipes were laid, the trenches were filled up, but the sidewalk was not restored to its former condition.   It was covered with loose boards or plank, and these boards were stated to have been placed there by Dugan, which he himself denied having done, but that he laid planks over the drive-way where he crossed to remove the earth from the excavations.

The plaintiff, in walking along the sidewalk, in the early part of the evening, but after it had become dark, by the tilting or moving of these boards, as the result of the uneven condition of the walk, was thrown down, and seriously injured; and it was for that injury this action was brought by her. And it was for the reason that the court considered the defendant John D. Karst, Jr., not responsible for this condition of the sidewalk that the complaint was finally dismissed.   But by the specifications, which were made a part of his contract, he, as the mason to whom the erection of the buildings had been let, was obligated to do all the digging for the trenches; and there is, accordingly, reason for believing that, in the opening and filling of the trenches, the persons doing that were acting for him, and under his authority.   He was also required by the specifications to do all filling in, to be done with earth well rammed, soaked, and made solid.   And, by a further part of the specifications, not only the trenches themselves, and their filling in, but the laying of the sidewalks, were portions of the work to be done by him; and he was also bound, at his own cost, to provide all manner of materials, labor, etc., for the due performance of the work.   And it could be inferred, as these were no parts of the contract with or employment of Dugan, that

v.10 N.Y.s.no.5—30

what he or his men may have done, if they did anything, in the excavation of the trenches, filling them in, and laying the boards, was for the defendant, and in his employment, since this walk was included within the work to be done by him, and the boards or plank had been there for such a length of time prior to the accident as reasonably to have apprised him of their condition. The facts were such, although they were controverted by other evidence, as would commit this as a proper subject for the consideration of the jury. Beyond that, he had a watchman employed to look after his work, as well as the materials upon the premises. Such a degree of probability was indicated as would leave the jury at liberty to conclude that he was responsible for this condition of the work; and, if he was, they might very well find that it had been placed not only in an unsafe, but a careless and negligent, condition.

The evidence of the plaintiff and of the policeman, who had frequently observed the vicinity, was sufficient, also, to justify the jury in believing that there was no fault on plaintiff's part contributing to the accident. It is true that the evidence as to these facts is fragmentary in the extreme. It was presented in the most incoherent manner, and without any system which would enable the court or the jury to appreciate its force or effect. But the plaintiff should not be made the sufferer because of the irregular manner in which her interests or rights were presented upon the trial. The case, on the contrary, should have been submitted to the jury; and the judgment, so far as it is in favor of the defendant John D. Karst, Jr., should be set aside, and a new trial directed, with costs to the plaintiff, to abide the event. But, as to the other defendant, there was no evidence connecting him with the cause of the accident, and the judgment in his favor should be affirmed.

VAN BRUNT, P. J., (*dissenting.*) I cannot concur in the result which has been arrived at by Mr. Justice BRADY, and concurred in by Mr. Justice DANIELS, in this case. I fail to find any evidence whatever making these defendants at all responsible for the accident which occurred to the plaintiff. It is true that they were doing work upon the premises in question, and that they had a watchman walking up and down in front of these buildings. But it is also true that there is not the slightest particle of evidence that this defendant had anything whatever to do with the excavation, which was covered with plank, upon which the plaintiff fell; and it is also proved beyond all question that they were not in sole charge of the premises, or that they had any charge thereof, except so far as their own work was concerned; that there were other and independent contractors; and that some one or other of these contractors had made these trenches, covered by the plank in question, over whose movements the defendant had no control, and for whose wrong-doing they were in no way responsible. I think that it is an entirely erroneous conclusion from the testimony to hold that there was any evidence from which a jury could find that these defendants were in charge of the premises in question. It appears conclusively from the evidence that the defendant had nothing to do with these excavations; that their work on the sidewalk had not commenced; and that others were doing work there, or had been, in the course of which these excavations were made, which were covered by plank probably belonging to the cellar digger. Under these circumstances, it is difficult to see how the defendants could be made responsible for the accident which happened. There is no evidence whatever that, in connection with any of the work they were carrying on, they were guilty of any negligence; and, as has already been said, there is no evidence that they were in charge of the premises, so as to direct the movements of the other contractors in reference to the work they were doing. It seems to be held that, because they had a watchman there, (it does not appear for what purpose, but probably to protect their own material which they were using,) that therefore he was to be deemed in sole charge of the building, and liable for the carelessness and negligence of the other con-

tractors. I have searched the evidence in vain for anything whatever connecting the defendants, in any way, shape, or manner, with either the maintaining or the original digging out of the trench covered by this plank. If the defendants had assumed any duty in respect to this trench, there might be another question; but there is no evidence whatever that they put the plank there. It is certain that they did not dig the trench; and, simply because they had a watchman to look after their own interests, they seem to have been held for the negligence of other and independent contractors, over whose movements they had no control. I think the learned court below was correct in dismissing the complaint, as no cause of action whatever was made out against the defendants.